Lane *v.* Sharpe.

---

JAMES S. LANE, plaintiff in error, *v.* JACOB SHARPE, defendant in error.

*Error to Adams.*

The rule is, where a contract is reduced to writing, that the writing affords the only evidence of its terms and conditions. All antecedent and contemporaneous verbal agreements are merged in the written contract.

The law will not permit an agreement to be partly in writing, and partly in parol; so that it is equally inadmissible to add to, take from, or specifically change the terms of a written agreement, by parol.

*Semble,* That matter collateral to a written contract may be proved by parol, but it must not change its terms, or increase or diminish the liability of the parties.

Evidence of a parol agreement, in relation to a sale of lands, made at the time a bond was executed for the conveyance of the same premises, and notes delivered for the consideration agreed to be paid therefor, is inadmissible.

Proof that a parol contract, together with a bond and notes, constituted the agreement between certain parties respecting the sale of land, and that the defendant would not have executed the notes, if the parol agreement had not been made, does not sustain an averment that the notes were given in consideration of the verbal agreement of the plaintiff to sell and convey the land to the defendant.

An averment that the plaintiff agreed that if any claim, adverse to the claim of the plaintiff, should he produced before the notes fell due, the agreement should be cancelled, is not sustained by proof that the agreement was that if the land should be redeemed by minor heirs, within two years from the date of the bond, the contract should be rescinded.

The redemption of land from a tax sale, by minor heirs, should be proved by records in the Auditor's Office, they being the best evidence of which the nature of the case would admit.

THIS was an action of *debt* by *petition and summons*, brought by Lane against Sharpe, on two promissory notes, dated March 20th, 1837, executed by Sharpe, and payable to Lane, in one and two years from date, respectively, in the sum of one hundred and six dollars each, with 12 per cent. interest from date.

To the plaintiff's petition, the defendant pleaded, first, that the said notes were made by the defendant without any good or valuable consideration. The plaintiff traversed the plea, tendering an issue, which was joined.

The defendant pleaded, secondly, that the notes were executed upon the following consideration, to wit : that plaintiff represented himself to be the owner of the south-east and south-west quarters of section 36, township 1, south, range 7 west, in Adams county, on the 20th day of March, 1837, which the plaintiff held by tax title ; and it was then and there verbally agreed between the plaintiff and the defendant, that the defendant should become the purchaser thereof, for the sum of $470 ; $150 of which to be paid cash in hand, and the residue to be secured by the promissory notes of the defendant to the plaintiff; one to be due in one year from said date, and the other to be due in two years from said date, to draw interest at 12 per cent.; and that it was then and there mutually agreed by and between the plaintiff and the defendant, that if said tracts of land, or either of them, should be redeemed by minor heirs, at any time before said notes should become due, then the bargain and agreement should be set aside, and said notes given up to the defendant; and that the notes in the petition described were executed for the consideration aforesaid, and for no other; and that the said south-west quarter of section 36, was afterwards, to wit, on the          day of                1838, redeemed by minor heirs; and so the said consideration has failed. The plaintiff replied, that the south-west quarter of section 36, in said plea men-

tioned, was not redeemed by minor heirs, as the defendant in his said plea has alleged, tendering issue, which was joined.

The defendant pleaded, thirdly, that the notes in the petition mentioned were executed in consideration of the verbal agreement, and understanding of the plaintiff, to sell and convey to the defendant, by a quitclaim deed, on or before the 20th day of September, 1839, the south half of section 36, in township 1, south, range 7, west of the 4th meridian, Adams county ; and that the plaintiff falsely represented, at the time of said agreement, and of the execution of the notes, to the defendant, that he had a regular tax title to the land ; whereas, in fact, the plaintiff had no tax title to the same ; and, though the time for making the conveyance was deferred, the plaintiff has not conveyed, nor has at any time been able to convey to the defendant any color of title to the land ; wherefore the consideration of the notes has failed. The plaintiff replied, that the notes in the petition mentioned were not executed in consideration of the verbal agreement and understanding of the plaintiff to sell and convey to the defendant, by a quitclaim deed, the said tract of land mentioned in said plea, as the defendant in said plea alleged, tendering issue, which was joined.

The defendant pleaded, fourthly, payment. The replication traverses the payment, and was joined.

The defendant pleaded, fifthly, that after the making of said notes, and before the commencement of this suit, to wit, on the 10th of November, 1839, an account was had and stated between the plaintiff and the defendant, concerning the sums of money in plaintiff's petition mentioned, and divers other sums, before that time due the defendant from the plaintiff, and concerning other dealings, or between the plaintiff and defendant, and concerning divers large sums of money had and received by the plaintiff for the defendant ; and, on such accounting, the plaintiff was found in debt to the defendant, in a large sum, to wit, $500 ; and the defendant then and there returned to the plaintiff the sum of $320, part of the said $500, in full satisfaction of the sums of money in the petition mentioned, and which the plaintiff then and there accepted and received in full satisfaction and discharge thereof. The plaintiff replied, that the defendant did not release to the plaintiff, and the plaintiff accept from the defendant, the sum of $320, in full satisfaction and discharge of the money in the plea mentioned, tendering issue, which was joined.

The defendant pleaded, sixthly, that the notes were made upon the following consideration, to wit : it was verbally agreed between the plaintiff and the defendant, that the plaintiff would sell to the defendant, the south-east and south-west quarter of section 36, in township 2, south, range 7 west, for the sum of $470, on the 20th of March, 1837 ; $150 of which to be paid cash in hand, and the residue in two equal annual instalments, with 12 per cent. in-

terest ; and if any claim to the said tracts of land, or either of them, adverse to the claim of the plaintiff, should be produced at any time before the said notes fell due, then the said agreement should be cancelled and set aside, and the money paid refunded ; and that, in consideration of said agreement, and for no other consideration, the defendant executed and delivered the said notes ; and that afterwards; and before the notes became due, a claim to the said land, adverse to the right and claim of the plaintiff, was by one Kibby presented; and that afterwards, in consideration of the premises, to wit, on the 10th of September, 1839, it was mutually agreed, between the plaintiff and defendant, that the notes should be given up to be cancelled. The plaintiff replied, that it was not agreed by and between the plaintiff and defendant, that if any claim to the tracts of land in the plea mentioned, or either of them, adverse to the claim of the plaintiff, should be produced at any time, before the notes fell due, that then the said agreement should be cancelled and set aside, and the money paid be refunded, as is in said plea alleged, tendering issue, which was joined.

On the trial the plaintiff gave in evidence the two notes described in the petition.

The defendant then called Wm. C. Lacy, who stated that he was the agent of the plaintiff to sell lands in Illinois, and, among others, that mentioned in the plea of the defendant; that his authority to sell said lands was in writing, which was lost, or mislaid, and that, after a diligent search, he could not find it ; and that said writing was to this effect, to wit : a list of lands stated on a piece of paper, and a statement at the bottom, signed by the plaintiff, authorizing the witness to sell the lands, fixing one dollar per acre as the minimum price ; that, in pursuance of such authority, witness sold to the defendant, who resides in St. Louis, Missouri, the south half of section 36, township 1, south, range 7 west, and the plaintiff wrote and signed the following bond to the defendant, for a deed for the said land, to wit : "This agreement made this 20th day of March, 1837, between James S. Lane, of the city of Saint Louis, and State of Missouri, and Jacob Sharpe, of Adams county, and State of Illinois, witnesseth, that whereas the said Lane has this day sold to the said Sharpe, the south half of section 36, in T. 1, S., R. 7 west, in Adams county aforesaid, for the sum of $470 ; $150 of which is paid in hand, and the balance in one and two years, in equal payments of one hundred and sixty dollars each, with 12 per cent. interest from the date, payable at the Quincy Branch Bank. Now if the said Sharpe shall pay the above described two notes, with 12 per cent. interest, at the place above named, and at the times respectively when the same may fall due, then the said Lane binds himself, his heirs, &c., to make the said Sharpe a quitclaim deed for the premises above described ; but if the said notes, or either of them, shall remain unpaid, as aforesaid, then the said Sharpe relinquishes all claim to the above described premises,

and the same becomes forfeit to the said Lane, and the said Lane is hereby authorized to sell and dispose of the same to any person, or persons, whomsoever he pleases. In testimony whereof the parties have hereto set their hands and seals the day and year first above written.

> "Js. S. LANE, [Seal.]
> "JACOB SHARPE, [Seal.]

" *Witness.*—W. C. LACY."

That the plaintiff prepared said bond in St. Louis, and sent it to Adams county where the defendant resided, by the witness, together with the notes sued on, which were also written by the plaintiff in St. Louis; that witness, as agent for the plaintiff, presented said bond and notes to the defendant, for him to sign; that the defendant refused to sign the same, alleging that they did not conform to the contract made between the witness, as agent of the plaintiff, and the defendant, and that he would not receive the said bond, and sign the said notes; that witness, as agent of the plaintiff aforesaid, then made a further parol contract with the defendant respecting said lands, and the defendant signed said bond and notes, accepted the bond, and delivered the notes to the witness, as agent for the plaintiff. That witness considered said parol contract, together with the bond and notes, as the contract between the parties respecting said lands; that the defendant would not have signed said notes, if said parol contract had not been made. The defendant's counsel then asked witness to state what that parol contract was, to which the plaintiff, by his counsel, objected; but the Court overruled the objection, and permitted the witness to proceed and state what the parol contract alluded to was, to which opinion of the Court, in overruling said objection, the plaintiff, by his counsel, excepted.

The witness then stated, that when he presented the bond and note aforesaid to the defendant, he refused to execute the same, alleging that the bond did not conform to the agreement which he, the defendant, had made with the witness, as agent of the plaintiff; that the witness, as agent of the plaintiff, then verbally agreed with the defendant, that if the aforesaid land was redeemed by minor heirs, at any time within two years from the date of said bond and notes, the contract should be rescinded, and the money which had been paid by the defendant should be refunded to him; and that, thereupon, the defendant executed the bond and notes, delivered the notes to the witness, and accepted the bond. This was in May, 1837. Witness sent the notes and the bond (executed in duplicate) to the plaintiff, but did not remember that he ever informed him of the verbal agreement aforesaid. When the witness, as agent of the plaintiff, sold lands for him, he informed the plaintiff of the contracts he had made; and the plaintiff always wrote the bonds and notes, and sent them to witness to be executed.

The agency of the witness ceased in the fall of 1837. The land was sold by the witness to Sharpe, for $470; $150 of which was paid in hand, and the two notes sued upon executed for the balance.

The defendant then called Samuel Griggs, and made the same proof by him in relation to the parol contract aforesaid, that had been made by the witness, Lacy.

To all of the evidence of the witness Griggs, the plaintiff, by his counsel, objected; but the Court overruled the objection, and allowed the evidence to be given to the jury; to which opinion of the Court, in allowing said evidence, the plaintiff excepted. The defendant then called Henry Wagg, who stated, that in the fall of 1839, he and the defendants met the plaintiff in Quincy, for the purpose of settling with him in relation to the lands they had purchased of him. That some conversation ensued between the plaintiff and the defendant, but what it was witness could not state. That the defendant produced some papers, but what they were, the witness could not state. The defendant said something about adverse claim to, or redemption of the land, but what it was, he, the said witness, could not state; but the plaintiff replied, such accidents would happen. The parties did not come to any settlement; the plaintiff said that his papers were at Springfield or Vandalia, but that he would meet the defendant in Quincy, in eight or ten days, and make a final settlement. Something was said, between the parties, about the contracts the defendant had made with Lacy; and the plaintiff said he was bound to stand to the contracts Lacy made for him. At the time appointed for the settlement, the defendant attended at Quincy, but the plaintiff did not meet him according to appointment.

To all the foregoing testimony of the witness Wagg, the plaintiff, by his counsel, objected, but the Court overruled the objection, and allowed the evidence to go to the jury; to which opinion the plaintiff, by his counsel, excepted.

The bond aforesaid was then produced and given in evidence by the plaintiff.

The foregoing was all the evidence in the case. The plaintiff, by his counsel, excepted to the several opinions of the Court before mentioned, in admitting the testimony of the said several witnesses to be given to the jury. The jury gave a verdict for the defendant.

Upon the rendition of the verdict, the plaintiff, by his counsel, moved the Court for a new trial, for the following reasons, to wit: "The verdict of the jury is contrary to the evidence in this case;" which motion was overruled by the Court; and the plaintiff, by his counsel, excepted. Judgment was rendered on the verdict, and the cause brought to this Court by writ of error.

The errors assigned are,

*First.* The Court erred in admitting the evidence of Lacy and

Griggs, as to the parol contract between Lacy and Sharpe, made at the time of the delivery of the notes and bond, and the acceptance of the bond by Sharpe;

*Second.* The Court erred in permitting the evidence of Wagg to go to the jury;

*Third.* The Court erred in overruling the plaintiff's motion for a new trial, and in entering up judgment on the verdict of the jury.

The cause was heard in the Court below, at the April term, 1841, before the Hon. Stephen A. Douglass.

O. H. BROWNING, N. BUSHNELL, and B. S. EDWARDS, for the plaintiff in error:

Lacy was a special agent for a particular purpose, and could not transcend the bounds of that authority. The authority is in this case to be gathered from the facts. Any person dealing with a special agent, deals with him at his own peril. Story's Agency 123, 125–6; 9 Pick. 542; 8 Wend. 494; 3 Johns. Ch. R. 344; 3 Term R. 757; 1 Peters 290.

There was no authority in this agent to make any representations. An authority to sell confers no power or authority to warrant the title, or to bind the principal by covenants. 5 Johns. 58; 7 Johns. 390.

The representations in this case, not being in writing, are void by the statute of frauds. 1 Vesey & Beames 206.

Parol proof is not admissible to contradict the contract which was afterwards reduced to writing. Story on Agency 127; 12 East 10; 1 H. Blac. 289; 1 Vesey & Beames 210; 3 Camp. 285; 5 Missouri 101; 5 Cowen 497; 2 Stark. Ev. 549, 551.

There is no evidence showing that the plaintiff recognised the authority of the agent to make the representations alleged.

A new trial should have been granted. The testimony does not show that the condition upon which the contract was to be rescinded ever occurred.

JAMES H. RALSTON and J. A. McDOUGALL, for the defendant in error.

CATON, Justice, delivered the opinion of the Court:

Two questions arise in this case: first, whether the Court erred in allowing the parol evidence to go to the jury; and secondly, whether a new trial should have been granted. The effect of the parol evidence was to show, that at the time of the final consummation of the contract, between the parties, when the notes were executed on one side, and the bond or contract on the other, in addition to the sealed instrument, it was agreed between the defendant and the agent of the plaintiff, that if the land in the agree-

ment mentioned, should be redeemed by minor heirs, at any time within two years from the date of the notes, the contract should be rescinded, and the money which had been paid by the defendant refunded.

The rule is, where a contract is reduced to writing, that the writing affords the only evidence of the terms and conditions of the contract. All antecedent and cotemporaneous verbal agreements are merged in the written contract. The law will not allow that an agreement may rest partly in writing, and parly in parol; so that it is equally inadmissible to add to, take from, or specifically change the terms of a written agreement, by parol. In this case, where the agreement of the parties was reduced to writing, we must assume that the written instrument contains the evidence of the real intention of the parties, in relation to the subject matter of the contract; and the enquiry is, whether the parol proof admitted, superadds anything to the agreement, whereby it is in fact changed, or its terms are in reality varied? We think it is. It makes that which is by the writing, clear, certain, positive, and conclusive, uncertain and contingent. The agreement in writing provides for an absolute sale of the land, upon the payment of the purchase money. The parol proof shows that the agreement was not absolute, but might be destroyed by a contingency to happen at any time within two years. The written evidence shows that the plaintiff only agreed to convey by quitclaim deed. The parol shows that he, in fact, warranted against the title being defeated, by the redemption by minor heirs, within two years. In the writing adduced, the parties say one thing; by the parol proof they are made to say quite a different thing. Indeed, if this evidence were to be admitted, we should find it difficult to determine what might not with equal propriety be superadded, by parol, to the written evidence of the intention of the parties. Unless we are to presume that the parties have expressed their whole intention in the writing which they have signed, we should not only destroy the sanctity, but the security of written agreements. It is true, that matter collateral to the writing, may be proved by parol, but it must not change the terms of the contract, or increase or diminish the liabilities of the parties. That this is an instance of this character, no better test could be devised than the case itself presents. Here it must be admitted, on all hands, that the agreement, whatever it was, constituted the consideration of these notes. If we take the written evidence alone, as the proof of what that agreement was, then no matter what may have subsequently turned up to impair the title, the consideration of the notes has not failed, for the doctrine of *caveat emptor* would apply to its utmost extent. But if we take the parol testimony, in conjuction with the written instrument, as evidence of what that agreement was, then, so different a contract is shown, which constituted the consideration of these notes, that the redemption, by minor heirs, within the two years, would show

a failure of consideration. In fact, the difference is such, that under one agreement, the vendor takes the risk of the redemption; under the other, that risk is taken by the purchaser. This certainty cannot be done without utterly destroying the rule which provides that the writing must contain the evidence of the agreement of the parties. If we allow parties to go thus far out of their own deed, to show their intentions, we shall be unable to fix any limit to the range of enquiry. I think the Court erred in allowing the evidence to go the jury.

But even admitting this parol proof to have been properly admitted, still the issues to which it is applicable, are not sustained. These issues are founded on the replications to the third and sixth pleas. The replication to the third plea, denies that the notes were given in consideration of the verbal agreement of the plaintiff to convey the land to the defendant. The witnesses, Lacy and Griggs, who speak on this point, say that they considered the parol contract, together with the bond and notes, as the contract between the parties respecting said land; and that the defendant would not have signed said notes, if said parol contract had not been made. This evidence, instead of showing that the parol contract was the sole inducement to the making of these notes, proves that the parol agreement, together with the written instrument, was the inducement to the notes. The issue tendered on the replication to the sixth plea, is that it was not agreed between said parties that if any claim adverse to the claim of the plaintiff, should be produced before the notes fell due, then the agreement should be cancelled, &c. The parol agreement proved was, that if the said land should be redeemed by minor heirs, within two years from the date of the bond, the contract should be rescinded, &c. Here too, the proof does not sustain the issue. The averment is, that the agreement should be void, if any claim should be presented. The proof is that it could only be avoided by the redemption by minor heirs. A multitude of claims might be fatal to the agrement set out in the plea, while according to the evidence, but a particular one could avoid it.

The replication to the second plea admits the contract for which the notes were given, as set out in the plea, and only denies that the land was redeemed by minor heirs. On the motion for a new trial, it becomes necessary to enquire whether there was sufficient proof to authorize the jury to find this issue for the defendants. The only evidence relied upon in the argument, or which approaches this question at all, is found in the testimony of Wagg. He says he heard the parties have a conversation in Quincy, when they were trying to settle, but what they said he could not state. The defendant produced some papers, but what they were he did not know. The defendant said something about adverse claim to, or redemption of the land, but what it was he could not state; but the plaintiff replied, "Such accidents will happen." The parties

did not settle. This is the evidence relied on to show that the land had been redeemed by minor heirs. If any such redemption was ever made, it should have been proved by the records in the Auditor's Office, that being the best evidence of which the nature of the case would admit. But so far from that being the proof here, hardly the shadow of a presumption is raised that any such redemption had ever been made. A new trial should have been granted.

The first and third errors being well taken, the judgment of the Court below is reversed with costs, and the cause remanded.

*Judgment reversed.*